IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AURELIA DIAZ DIAZ,<br><br>     Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | CIVIL NO. 08-1038 (FAB/CVR) |

**OPINION AND ORDER**

    Above plaintiff, Ms. Aurelia Díaz-Díaz, (hereafter "Ms. Díaz-Díaz") filed a complaint seeking judicial review of the decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for entitlement to a period of disability and ensuing benefits. Ms. Díaz-Díaz has requested that judgment be issued remanding the case to the Commissioner so that, upon good cause, further consideration be granted to her subjective complaints of pain and to a residual functional assessment since the previous decision of no disability because of non-severe impairments was contrary to the substantial evidence of record. (Docket No. 1).[1]

    The Commissioner answered the complaint, filed copy of the administrative record, and a memorandum of law in support of the Commissioner's decision. (Docket Nos. 4, 5, 7). Counsel for plaintiff, Atty. Louis A. De Mier LeBlanc, filed a memorandum of law in support of plaintiff Díaz-Díaz' position. (Docket No. 6). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docket No. 10).

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing". Section 205(g).

After a perusal of the pleadings in this case (including plaintiff's and defendant's briefs, as well as the administrative record containing the medical evidence on file), this United States Magistrate Judge **AFFIRMS** the Commissioner's decision and **DENIES** plaintiff's appeal.

## GENERAL BACKGROUND

Ms. Díaz-Díaz is a fifty-two years old female, who graduated from high school and had performed relevant work as electronic operator. Plaintiff has alleged inability to work since June 20, 1994, at age forty, because of fibromyalgia, hypertension, cervical and lumbar trauma and bilateral carpal tunnel syndrome.[2] Ms. Díaz-Díaz meets the disability insured status through June 30, 2000.

## PROCEDURAL HISTORY AND THE ADMINISTRATIVE HEARING

Plaintiff's current application for social security benefits was denied initially. On May 12, 2006, an administrative hearing on her application for disability benefits was held. *(Tr. pp. 250-260)*.

Thereafter, the presiding ALJ Ramón E. Quiñones, issued an administrative opinion on June 21, 2006, finding plaintiff not to be under disability, which was affirmed by the Appeals Council and became then the final decision of the Commissioner of Social Security which is now subject of this judicial review *(Tr. pp. 16-21)*.

---

[2] The onset date was amended to December 16, 1997.

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

In the opinion of the ALJ the evaluation process mandated by law was applied, insofar as concluding that plaintiff: (1) meets the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through the date of the administrative decision; (2) has not engaged in substantial gainful activity since the alleged onset date of disability. At step three the ALJ was to determine the existence of an impairment or a combination of impairments that was considered "severe" based upon the Regulations found at 20 C.F.R. § 404.1520(b), to proceed for further examination on whether these prevented or not from performing her past relevant. Still absent the existence of an impairment or combination thereof that could be considered severe, the ALJ found claimant was not disabled at step two of the inquiry, without need of additional inquiry.

The ALJ reviewed and discussed in the administrative opinion that Ms. Díaz-Díaz' condition for the date she was last insured was essentially hypertension. The ALJ concluded that, by the date she was last insured, that is, June 30, 2000, plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basis work-related activities for twelve (12) consecutive months, for which Ms. Díaz-Díaz was found not to have a severe impairment.

The ALJ indicated having considered also allegations that plaintiff suffered from pain in the lower back, lack of strength, and numbness of hands and body pains. The ALJ also considered subjective complaints that the conditions claimed resulted in limitations

to perform physical activities and for sustained prolonged standing, walking and sitting. Still, it was determined, through the conservative treatment afforded and the medical record, including electromyographic, x-rays, and nerve conduction velocity studies, she did not sustain the degree of significant limiting impairments alleged. Neither were limitations claimed supported by the ALJ's observation of plaintiff at the administrative hearing, nor by the testimony as to daily activities she was able to carry out, including personal care, limited driving, mopping, sweeping and cooking meals, as well as attending church activities. *(Tr. pp. 19-20).*

The ALJ further discussed the medical evidence which did not fully support the exertional limitations plaintiff had indicated as a result of a musculo-skeletal condition. As such, the opinion of treating physician Dr. Balbino Ayala, that Ms. Díaz-Díaz could carry only limited weight and restrictions as to posture and manipulative activities was not afforded controlling weight because it was inconsistent with the other medical evidence on record. (*Id. p. 20).*

## ANALYSIS

**A.    Legal Standard**.

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters

entrusted to experts. *See* Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if [s]he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process is to be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. at 140-42; Goodermote v. Secretary of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If she is, disability benefits are denied. §§ 404.1520(b). If she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, as was considered in the instant case, the disability claim is denied. However, if the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity (RFC), as well as age, education, and work experience. The claimant would be entitled to disability benefits only if she is not able to perform other kind of work. §§ 404.1520(f).

It is the claimant's burden, under steps one through four, of proving that she cannot return to her former employment because of the alleged disability. Santiago v. Secretary of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  In the present case, the ALJ determined that claimant did not have a severe impairment or combination of impairments for which reasons there was no need to consider claimant's residual functional capacity (RFC) to perform her previous job or any other work activity.

**B.     Conclusions of Law**.

The ALJ concluded that plaintiff Díaz-Díaz and the medical evidence available failed to establish, except for some high blood pressure that had shown no organ end damage, the existence of significant limitations imposed by any severe impairment or combination of impairments.  Electrocardiograms studies had shown normal findings, without any evidence of angina or congestive heart failure.  Although treating physicians had reported cervical and lumbar muscle spasms, there was no evidence of disabling pain, neurological deficits or severe limitation in the range of motion.  Diagnostic studies revealed early degenerative changes of the lumbosacral spine, mild degenerative disc disease at L5-S1, minimal posterior right lateral disc protrusion at L5-S1, and mild concentric disc bulging at L4-L5.  Still, there was no significant degenerative disc disease, impingement of the spinal sac or neural root involvement.  X-rays of the knees were compatible with left knee arthrosis. As to allegations of pain and numbness in the hands, the treating sources found only tenderness in the left wrist with some limitation of movement, while electromyographic studies of the upper extremities showed no evidence of active root

Aurelia Díaz-Díaz  v. Commissioner of SS
Opinion and Order
Civil No. 08-1038 (FAB/CVR)
Page No. 8

lesions.  Nerve conduction studies did reveal peripheral neuropathy and left carpal tunnel syndrome and ulnar entrapment.  *(Tr. p. 20).*

The medical record examined by the ALJ showed plaintiff Díaz-Díaz had been treated conservative with oral medication, physioteraphy, and acupuncture which provided relief for her symptoms.

Ms. Díaz-Díaz testified at the administrative hearing and responded to questions by her counsel.  Although she complained of cervical and lumbar pain and uncontrolled blood pressure, she also indicated having refused surgery for both hands upon lack of guarantee of significant improvement.  She was able to perform light house chores, including cooking, with the use of small pots and pans, attend church, drive short distances and take care of her personal needs.  *(Tr. pp. 20, 257-258).*

Plaintiff Díaz-Díaz  contends the ALJ's decision is not supported by the medical evidence of record. The memorandum of law also states there should be a residual functional capacity assessment (RFC) and the lack thereof should require the case be referred back to the administrative agency for further consideration. (Docket No. 6, Plaintiff's memo p.4).  However, an ALJ can determine that a claimant is not disabled without requiring an expert's residual functional capacity evaluation as part of the record. Thus, to trigger the requirement for a RFC by a physician, since generally an ALJ is considered not qualified to assess RFC based on a bare medical record, claimant must first put her residual functional assessment in issue.  Santiago v. Secretary of Health & Human

Servs., 944 F2d. at 4. (residual functional assessment not required when the record reflects only mild mental and physical impairments).

The ALJ indicated no weight was afforded to plaintiff's treating physician assessment about her limitations. When the treating source opinion is well supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence, it will be given controlling weight. *See* SSA regulations, 56 Fed.Reg. 36932. The ALJ is entitled to consider how the claimant's testimony fits with the rest of the evidence of record. *See* Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

A review of the ALJ's decision shows that he disbelieved the assertions by the treating physician regarding limitations for lack of objective evidence establishing the presence of medical impairments which could reasonably be expected to cause the symptoms alleged.[3] In reviewing the decision of the ALJ, it is clear that all the medical evidence in the record was duly considered. As the First Circuit has discussed, the ALJ is "not required to recite every piece of evidence that favored appellant." Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise)). *See* 20 C.F.R. § 404.1527(d)("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given

---

[3] Notes by Dr. Ayala dated 1-18-1998 indicated the patient being able to lift and carry five pounds and a maximum of eight pounds, stand/walk for two hours in an eight hour workday and sit for four hours, with restrictions as to postural and manipulative activities. *(Tr. p. 20).*

to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

It is well established that the treating physician's opinions must be given considerable weight in determining disability, however, these are not conclusive. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994). Thus, the ALJ may disregard the treating physician's opinion with a showing of good cause. Moreover, "the good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)). Sánchez v. Commissioner of Social Security, 270 F.Supp.2d 218, 221 (D. Puerto Rico 2003).

A brief discussion of the available medical evidence is consonant with the averments of the ALJ in the opinion when considering Ms. Díaz-Díaz' claims.  The electromyographic examination dated June 13, 1994, found no evidence of active root lesions. *(Tr. p. 197)*. The nerve conduction velocity studies of same date found a prolonged delay motor and sensory for left median and left ulnar DI compatible with carpal tunnel syndrome with ulnar entrapment. *(Tr. p. 198)*.  The EMG dated same date indicated increased insertional activity positive waves compatible with radiculopathy L5-S1 bilateral. *(Tr. p. 199)*. A nerve conduction study indicated peripheral neuropaty axonopathy demielinization *(Tr. p. 200)*. In 1998 a whole body scan was performed and it only showed abnormal study as to DJD on

the knees.  The spinal canal appeared ample, without evidence of spondylolisthesis.  The degenerative disc disease at L5-S1 level was evidence of mild disc space narrowing and marginal sclerosis.  There was no significant impingement upon spinal sac or neural root.  The mild concentric disc bulging seen at L4-L5 level had no significant impingement upon the spinal sac.  The diagnostic impression was of mild early degenerative changes of lumbo sacral spine; mild degenerative disc disease at L5-S1 level; minimal posterior-right lateral disc protrusion at L5-S1 level and mild concentric disc bulging at L4-L5 level, without significant impingement upon the spinal sac or neural root. *(Tr. p. 246)*.  The MRI of 1998 also indicated unremarkable lumbar lordosis, the intervertebral spaces being well preserved and the intervertebral disc normal in intensity, without evidence of neural foramina or canal stenosis.  As such, there was no significant degenerative disc disease.  *(Tr. p. 247)*.  Additional medical evidence dated 2005 and 2006 is not further discussed since plaintiff Díaz-Díaz' insured status had long expired by the year 2000. *See* Moret Rivera v. Secretary of Health & Human Servs., 19 F.3d 1427 (1st Cir. 1994), unpublished opinion citing Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); Basinger v. Heckler, 725 F.2d 1166, 1169( 8th Cir. 1984; Gonzalez v. Secretary of Health & Human Servs., 757 F.Supp. 130, 134 (D. Puerto Rico 1991); Alcaide v. Secretary of Health & Human Servs., 601 F.Supp. 669, 672-73 (D. Puerto Rico 1985) (medical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before claimant's insured status expired).

In consideration of all above medical record the ALJ also referred to plaintiff's complaints of pain as not consonant with the absence in the medical findings to support same and with the conservative treatment followed by her treating physicians. Section 3(a)(1), which amended Section 223(d)(5) of the Social Security Act, 42 U.S.C. 423 (d)(5), states:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory techniques, which show the existence of a medical impairment that results from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce the pain or their symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The amendments to the Social Security Disability Benefits Act of 1984, Pub. L. No. 98-460, Section 3, 98 Stat. 1794 (1984), make clear there must be a medical impairment that can reasonably be expected to produce the pain alleged. Other evidence, including statements of claimant and/or his physician shall be considered. Although the Commissioner cannot be at the whim of any subjective allegation of pain, so long as the statements of claimant or of his physician as to pain are not inconsistent with the medical findings these should permit a finding of disability where the medical findings alone would not. Avery v. Secretary, 797 F.2d 19, 29 (1st Cir. 1986).

Where a potential basis for pain and restriction exists, the subjective symptoms must be evaluated with due consideration for credibility, motivation and medical evidence of impairment. Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985); Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975). When pain or restriction is shown to exist, the actual degree of pain plaintiff suffered is for the Commissioner to evaluate in light of the supporting evidence. Gagnon v. Secretary of Health & Human Servs., 666 F.2d 662, 665 (1st Cir. 1981). Although pain is subjective, clinical techniques are appropriate to use in evaluating the probability of its existence, magnitude and disabling effects. Rico v. Secretary of Health, Education and Welfare, 593 F.2d 431, 433 (1st Cir. 1979).

The ALJ in this case indicated he observed plaintiff at the administrative hearing as moving freely, without any limitation of movement evident. The ALJ also mentioned having considered pain and plaintiff's statements under the guidelines of Avery finding them not credible in light of the information contained in the medical reports, studies, diagnostic impressions and conservative treatment afforded. *(Tr. p. 20)*. The ALJ could properly reject the credibility of plaintiff's statements, more so after being able to observe her at the administrative hearing, in regards to the claimed limiting effects of her pain and other symptoms. *See* Irlando Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.1991) (*per curiam*) (explaining that it is the responsibility of the Secretary to determine issues of credibility).

Accordingly, and as sustained by the medical evidence and the record as a whole, the undersigned United States Magistrate Judge finds that the ALJ did not err in considering

the evidence and further concludes that the administrative findings were supported by substantial evidence. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Secretary as to any fact are conclusive, if supported by the above stated substantial evidence.[4]

## CONCLUSION

For the reasons stated above, this United States Magistrate Judge, finds the decision of the ALJ is supported by substantial evidence. Therefore, it is **ORDERED** that the Commissioner's decision be **AFFIRMED** and plaintiff's appeal be **DENIED**. Judgment is to be entered accordingly.

At San Juan, Puerto Rico, on this 14th day of January of 2009.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE

---

[4] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).